BACH, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 17—November 10, 1931.*

144

*Raleigh H. Thurwachter* of Waukesha, for the plaintiff in error.

For the defendant in error there was a brief by *Herman R. Salen,* district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt* and *Mr. Salen.*

NELSON, J. The defendant contends that the court committed prejudicial error upon the trial of said action—

(1) In refusing to quash the search warrant;

(2) In admitting improper and incompetent evidence obtained directly by virtue of the search warrant;

(3) In admitting the court records of the conviction of the two inmates; and

(4) In admitting the testimony of one John Morris as to conversations with Peggy O'Neill, the female inmate, not in the presence of the defendant.

The errors assigned may be considered and determined by discussing three questions.

1. Did the court err to the prejudice of the defendant in admitting certain articles seized on the raid and in permitting the officers conducting the search to testify as to what they observed in the house while conducting the search therein?

The answer to this question depends on whether the search was lawful.

This court has recently determined, after most careful consideration, that under the Fourth and Fifth amendments to the constitution of the United States and sec. 11, art. I, of the constitution of this state, search warrants may not legally issue unless there is presented to the magistrate issuing the same evidence upon which a finding of probable cause may be based; that search warrants issued upon information and belief are illegal and void, and that a search made under an illegal search warrant is void and does not permit the introduction of the evidence obtained or discovered by virtue of such illegal search. *Glodowski v. State,* 196 Wis. 265, 220 N. W. 227.

The only difficulty we have is in determining whether the warrant herein was in fact a search warrant. If it was a search warrant, then obviously it is subject to the condemnation of the rule established by the *Glodowski Case* because it was issued on information and belief ("good reason and belief") and not upon probable cause shown. An examination of ch. 363, Stats., which specifically relates to search warrants, reveals that it contains no provision authorizing the search of a house of ill fame. An examination, however, of sec. 351.36, which relates to proceedings on complaint against a house of ill fame, shows that it is in all respects similar to the provisions of sec. 348.17, relating to a gambling house, the entry thereinto, the seizure of implements, and the arrest of persons resorting thereto for the purpose of gambling. While neither sec. 351.36 nor sec. 348.17 has

been directly construed by this court, an ordinance of the city of Milwaukee, which was in all material respects similar, if not practically identical, with sec. 348.17, was held to authorize a search upon complaint being made, etc. *State ex rel. Milwaukee v. Newman,* 96 Wis. 258, 71 N. W. 438. The warrant issued under such ordinance was held to be a search warrant and was also held to be valid. While said ordinance was held to be constitutional and not violative of sec. 11, art. I, of the constitution of this state, we cannot accept the law of that case as sound in view of the holding in the *Glodowski Case.* The validity of the search warrant in *State ex rel. Milwaukee v. Newman, supra,* was not questioned nor was its invalidity suggested because it was founded on a complaint made upon information and belief and without a showing of probable cause. In view of the law now established it must be held that *State ex rel. Milwaukee v. Newman, supra,* is overruled, at least to the extent that said case may be considered authority for the proposition that search warrants may be issued under such ordinances and similar statutes upon information and belief and without a showing of probable cause.

One of the purposes of searches made under either sec. 348.17 or sec. 351.36 of the Statutes is undoubtedly to obtain evidence in aid of prosecution. *State ex rel. Milwaukee v. Newman, supra.* After careful consideration we reach the conclusion that the warrants authorized by secs. 348.17 and 351.36 are in reality search warrants and that their issue is governed by rules of law applicable to search warrants. It must therefore be held that the warrant herein was improperly issued and any search conducted under it was therefore illegal and void. The evidence obtained upon the unlawful search should have been suppressed.

Without reciting in detail the character of the evidence improperly received, we reach the conclusion that its admission was prejudicial even though there was other competent

evidence which might probably have been sufficient in and of itself to support the verdict of guilty rendered.

It is the duty of courts to protect the citizen in his constitutional rights whenever such rights are invaded. The rights secured by the Fourth and Fifth amendments to the constitution of the United States are among the most important enjoyed by the citizen. In *Gouled v. U. S.* 255 U. S. 298, 304, 41 Sup. Ct. 261, the supreme court of the United States, speaking through Mr. Justice CLARKE, said:

"Such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty, and private property;' that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is an important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of *habeas corpus,* and to due process of law."

This court, speaking of the importance of such rights, through Mr. Justice STEVENS, in *Glodowski v. State, supra,* said (p. 268) : "The preservation of the rights guaranteed by the constitution is of greater moment than the detection of any crime or the punishment of any single offender."

2. Did the court err to the prejudice of the defendant in admitting the court records showing the conviction of the two inmates arrested at the time of the search and who were convicted upon their pleas of guilty?

The record reveals that the State first attempted to prove, by oral testimony, that the inmates entered pleas of guilty (while the defendant was present in court) to the charges of being inmates of a house of ill fame. This was apparently done on the theory that such pleas in some way bound the defendant because the pleas of guilty were uttered in her presence while she remained silent and made no attempt to controvert such pleas. Later on, because of the objection of the defendant that oral testimony as to court proceedings was

not the best evidence, the prosecution called the clerk of the court, who produced the records of the court showing the conviction of the two inmates upon their pleas of guilty. After having testified as to the records the clerk testified, in reply to questions directed to that end, that the defendant was present in court at the time such pleas of guilty were entered. It is not perceived on just what theory such evidence was competent on defendant's trial. Certainly she was not bound by pleas of guilty entered by others in court even though she was present. Obviously it would have been improper for her to raise a row or attempt to controvert the pleas made by others in proceedings in which she was not involved. It is now claimed, however, on this appeal, that such evidence was competent because it tended to show the character of the house at the time of the defendant's arrest. In 18 Corp. Jur. p. 1268, it is said:

"The reputation which an inmate or frequenter had prior to the time laid in the indictment is admissible to show the reputation such person had within the time laid in the indictment. To prove general reputation of the inmates, the record of former convictions of defendants is admissible."

So far as we have been able to find, this is as far as courts may properly go in admitting records of former convictions of inmates. An examination of the authorities cited in support of the text reveals no case in which the conviction of an inmate or frequenter of the house at the time laid in the indictment is considered competent. *State v. Barnard,* 64 Mo. 260; *Harwood v. People,* 26 N. Y. 190; *Key v. State,* 71 Tex. Crim. Rep. 485, 160 S. W. 354; *Hardeman v. State,* 94 Tex. Crim. Rep. 642, 252 S. W. 503.

3. Did the court err in admitting the testimony of John Morris, who was not a member of the searching party, and who was admitted voluntarily to said house, as to certain conversations had with Peggy ONeill, without the presence of the defendant?

We think, under the broad rules relating to the admission of evidence tending to show the character of the house, that the conduct and conversation of the inmates and frequenters may unquestionably be shown. See 18 Corp. Jur. p. 1269, § 98, and citations in support of the text.

Because of the improper admission of evidence obtained under the obviously unlawful search and of the court records showing a conviction of the two inmates, the judgment of conviction herein must be set aside and a new trial granted. It is not to be understood that a search warrant may not issue for the search of a house of ill fame when probable cause is shown.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings according to law.